IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| YOSHIRO P. SANNEY, #A0223262,<br><br>        Plaintiff,<br><br>   vs.<br><br>HALAWA MEDICAL UNIT, MEDICAL UNIT STAFF AND ADMIN TEAM, BARNEY TOYAMA, M.D.,<br><br>        Defendants. | Civ. No. 20 00141 HG WRP<br><br>ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND |

Before the Court is pro se Plaintiff Yoshiro P.
Sanney's prisoner civil rights Complaint brought
pursuant to 42 U.S.C. § 1983. ECF No. 1.[1] Sanney
claims that Defendants the Halawa Correctional Facility
("HCF") Medical Unit, unnamed Medical Unit and
Administration Team staff, and Barney Toyama, M.D.,
violated his rights under the Eighth Amendment by
denying him adequate medical care in July 2016 and
again in September 2017, allegedly resulting in
permanent injury to his lung.

---

[1] The Court refers to the Federal Judiciary's Case
Management/Electronic Case Files ("CM/ECF") numbering and
pagination system for filed documents when citing such documents.

For the following reasons, the Complaint is DISMISSED without prejudice for its failure to state a colorable claim for relief pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(a).  Sanney is granted leave to file an amended pleading that cures the deficiencies noted below, on or before May 18, 2020.

## I.   <u>STATUTORY SCREENING</u>

The Court must conduct a pre Answer screening of all prisoners' pleadings pursuant to 28 U.S.C. §§ 1915(e)(2) (if they are proceeding in forma pauperis) and 1915A(a) (if they allege claims against government officials).  Claims or complaints that are frivolous, malicious, fail to state a claim for relief, or seek damages from defendants who are immune from suit must be dismissed.  *See Lopez v. Smith*, 203 F.3d 1122, 1126 27 (9th Cir. 2000) (en banc); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010).

Screening under §§ 1915(e)(2) and 1915A(a) involves the same standard of review as that used under Federal Rule of Civil Procedure 12(b)(6).  *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) (citation

omitted).  Under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  A claim is "plausible" when the facts alleged in the complaint would support a reasonable inference that the plaintiff is entitled to relief from a specific defendant for specific misconduct.  *Id.* (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*  The "mere possibility of misconduct" or an "unadorned, the defendant unlawfully harmed me accusation" falls short of meeting this plausibility standard.  *Id.* at 678 79; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

Pro se litigants' pleadings must be liberally construed, and all doubts should be resolved in their favor.  *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted).  The Court must grant leave to amend if it appears the defects in the complaint can

be corrected, *Lopez*, 203 F.3d at 1130, but if a claim or complaint cannot be saved by amendment, dismissal with prejudice is appropriate. *Sylvia Landfield Tr. v. City of L.A.*, 729 F.3d 1189, 1196 (9th Cir. 2013).

## II.   <u>BACKGROUND</u>[2]

In July 2016, Sanney began experiencing "symptoms consist[e]nt with pneumonia," including "chills, night sweats, incessant coughing, and loss of appetite." Compl., ECF No. 1 at #6.  He was seen at the HCF Medical Unit three times within a month for these symptoms, but he was not seen by a doctor until two days after he filed a grievance.  At that visit, Dr. Toyama examined Sanney and ordered a chest X ray.  *Id.* at #6.

On August 26, 2016, the X ray revealed an abnormality in Sanney's upper right lung.  Dr. Toyama then ordered a second X ray, which was taken on

---

[2] On screening, Sanney's facts are accepted as true and construed in the light most favorable to him.  *Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014).

September 20, 2016.[3]  The second X ray revealed scarring on Sanney's upper right lung; the radiologist's consult record stated that "a CT scan [could be] done if further information was desired."[4]  *Id.* at #7.

Dr. Toyama prescribed Sanney a five day course of Azithromycin but he did not order a CT scan.  Sanney says that this treatment improved his breathing, allowing him to return to his prison job, although he was restricted to light duties for an undisclosed period.

Approximately one year later, Sanney began experiencing similar symptoms to those that he had in 2016.  Dr. Toyama examined Sanney and ordered that he be taken to the Pali Momi Medical Center ("Pali Momi") for a CT scan.  Sanney claims that two days later he was told that he had "highly contagious" tuberculosis and he was taken imediately to The Queen's Medical

---

[3] Sanney does not detail what treatment he received between his first appointment at the HCF Medical Unit and his appointment with Dr. Toyama, or between the first and second X-rays.

[4] A "computed tomography scan," known as a CT or CAT scan, "uses a combination of X-rays and a computer to create pictures of organs, bones, and other tissues," that show more detail than regular X-rays. https://www.webmd.com/cancer/what-is-a-ct-scan#1.

Center ("QMC") isolation unit for evaluation and further testing. *Id.* at #7.

On September 19, 2017, QMC Pulmonologist Dr. Sato ruled out tuberculosis and diagnosed Sanney with invasive pulmonary aspergillosis.[5] Sanney says that Dr. Sato told him that approximately one third of his upper right lung was damaged, and, although it was impossible to pinpoint, Sanney may have had the infection for nine months to one year. Sanney was treated with intravenous "Vericonazole" for several days and discharged from QMC when his condition improved.[6] *See id.* at #8. He continued to take voriconazole until he

---

[5] Invasive pulmonary aspergillosis is a fungal infection that:

> is the most severe form of aspergillosis. It occurs when the infection spreads rapidly from the lungs to the brain, heart, kidneys or skin. Invasive aspergillosis occurs only in people whose immune systems are weakened as a result of cancer chemotherapy, bone marrow transplantation or a disease of the immune system. Untreated, this form of aspergillosis may be fatal.

https://www.mayoclinic.org/diseases-conditions/aspergillosis.

[6] Antifungal medications "are the standard treatment for invasive pulmonary aspergillosis," of which "voriconazole (Vfend)" is considered the "most effective treatment." https://www.mayoclinic.org/diseases-conditions/aspergillosis.

developed side effects and was taken off the drug by a
QMC infectious disease specialist.  Sanney does not set
forth any details regarding his condition or medical
care since September 2017.

Sanney alleges that all Defendants, who are named
in their individual and official capacities, violated
the Eighth Amendment by failing to provide him adequate
medical care, which he alleges resulted in permanent
damage to his lung.  He seeks compensatory and punitive
damages.  *Id.* at 11.

### III.  **DISCUSSION**

To state a claim under 42 U.S.C. § 1983, a
plaintiff must allege: (1) that a right secured by the
Constitution or laws of the United States was violated,
and (2) that the alleged violation was committed by a
person acting under the color of state law.  *See West
v. Atkins*, 487 U.S. 42, 48 (1988).

Section 1983 requires a connection or link between
a defendant's actions and the plaintiff's alleged
deprivation.  *See Monell v. Dep't of Soc. Servs.*, 436
U.S. 658, 692 (1978); *Rizzo v. Goode*, 423 U.S. 362,

371 72, 377 (1976); *May v. Enomoto*, 633 F.2d 165, 167 (9th Cir. 1980). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). Thus, a plaintiff must allege that he suffered a specific injury as a result of a particular defendant's conduct and must affirmatively link that injury to the violation of his rights.

## A.   Eleventh Amendment Immunity

The "Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities." *Aholelei v. Dep't of Pub. Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 03 (1984); *Flint v. Dennison*, 488 F.3d 816, 824 25 (9th Cir. 2007).

Thus, official capacity defendants are subject to suit under § 1983 only "for prospective declaratory and injunctive relief . . . to enjoin an alleged ongoing violation of federal law." *Oyama v. Univ. of Haw.*, 2013 WL 1767710, at *7 (D. Haw. Apr. 23, 2013) (quoting *Wilbur v. Locke*, 423 F.3d 1101, 1111 (9th Cir. 2005), *abrogated on other grounds by Levin v. Commerce Energy Inc.*, 560 U.S. 413 (2010)); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."); *Ex parte Young*, 209 U.S. 123 (1908).

First, the HCF Medical Unit cannot be sued under § 1983 because it is not a person. *See Vance v. Cty. of Santa Clara*, 928 F. Supp. 993, 996 (N.D. Cal. 1996) ("Naming a municipal department as a defendant is not an appropriate means of pleading a § 1983 action[.]"). Claims against the HCF Medical Unit are DISMISSED.

Second, to the extent that Sanney names Defendants Dr. Toyama and as yet unidentified HCF Medical Unit

*personnel* in their official capacities, he fails to state a claim because he does *not* allege an ongoing constitutional deprivation or seek any form of prospective injunctive relief.  Official capacity claims seeking damages against Dr. Toyama and HCF Medical Unit staff are DISMISSED.

**B.  Eighth Amendment:  Denial of Adequate Medical Care**

To prevail on a claim under the Eighth Amendment for inadequate medical care, a prisoner must demonstrate that a defendant acted with "deliberate indifference to [his] serious medical needs."  *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  There is an objective prong and a subjective prong to the deliberate indifference analysis.

First, a prisoner must show an objective, "serious medical need."  *Jett*, 439 F.3d at 1096 (citations omitted).  A "'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'"  *McGuckin v. Smith*, 974

F.2d 1050, 1059 60 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (*en banc*) (internal citation omitted). "The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain," are examples of a serious medical need. *McGuckin*, 974 F.2d at 1059 60.

Second, a prisoner must show that the defendant's response to that need was subjectively, deliberately indifferent. *Jett*, 439 F.3d at 1096; *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled on other grounds by Peralta v. Dillard*, (9th Cir. 2014). Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." *Jett*, 439 F.3d at 1096 (citing *McGuckin*, 974 F.2d at 1060). A defendant must know of and disregard an

excessive risk to the plaintiff's health. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

A difference of opinion about treatment between a plaintiff and prison medical authorities "does not give rise to a § 1983 claim," but it does not necessarily preclude one, either. *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981); *Hamby v. Hammond*, 821 F.3d 1085, 1097 (9th Cir. 2016) (Gould, J., concurring in part and dissenting in part).

"Neither negligence nor gross negligence will constitute deliberate indifference." *Clement v. California Dep't of Corr.*, 220 F. Supp. 2d 1098, 1105 (N.D. Cal. 2002); *see also Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980). Nor does medical malpractice "become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106; *see also McGuckin*, 974 F.2d at 1050. A delay in medical care, without more, is insufficient to state a claim against prison officials for deliberate indifference. *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985). The

indifference must be substantial, such that the action rises to a level of "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 105.

Finally, even if deliberate indifference is shown, the prisoner must demonstrate harm caused by the indifference. *Jett*, 439 F.3d at 1096; *see Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989) (holding that a delay in medical treatment is not an Eighth Amendment violation unless is was harmful).

### 1. *Dr. Toyama*

Sanney alleges that Dr. Toyama misdiagnosed him with tuberculosis, rather than invasive pulmonary aspergillosis, thereby violating his rights under the Eighth Amendment.

First, when Dr. Toyama initially met with Sanney he clearly considered Sanney's symptoms a "serious medical need," and he treated them as such. *See Jett*, 439 F.3d at 1096. Dr. Toyama immediately ordered a chest X ray, and when that X ray revealed an abnormality, he ordered a second X ray. Based on these X rays, Dr. Toyama diagnosed Sanney with pneumonia and prescribed a course

of antibiotics that alleviated Sanney's breathing difficulties and allowed him to return to work within days, albeit on light duty.  Sanney does not allege any other facts showing that his symptoms did not improve during the next year, or that Dr. Toyama refused to treat him if that was the case.  Nothing within this scenario supports a finding that Dr. Toyama was deliberately indifferent to Sanney's serious medical needs.

Although Sanney asserts that Dr. Toyama "ignored" the radiologist's "recommendation" to order a CT scan, he misinterprets the radiologist's statement.  Compl., ECF No. 1 at #7.  As Sanney sets forth, the radiologist said, "*if* further information was desired" a CT scan could be done.  *Id.* (emphasis added).  Sanney responded well to Dr. Toyama's treatment, however, obviating the need for further information.  If Sanney had not recovered, then Dr. Toyama may have ordered a CT scan, but that is not what Sanney alleges occurred.

Sanney also suggests that, if Dr. Toyama had ordered the CT scan in 2016, his invasive pulmonary

14

aspergillosis would have been discovered sooner.  This
is speculation made from the perspective of hindsight,
and represents only Sanney's after the fact
disagreement with Dr. Toyama's treatment.

When Sanney presented with the same symptoms one
year later, Dr. Toyama immediately sent him to Pali
Momi for a CT scan.  It is unclear whether Dr. Toyama
diagnosed Sanney with tuberculosis or whether that
diagnosis was made in consultation with Pali Momi's
physicians after the CT scan was taken.  Regardless,
once the diagnosis was made, Sanney was rushed to the
QMC isolation unit to determine whether it was correct.
After additional tests and observation at QMC, within
days a QMC specialist determined that Sanney had
invasive pulmonary aspergillosis and treatment was
begun.  Even after this treatment concluded, Sanney was
monitored, as shown by his statement that he continued
voriconazole until a QMC physician discontinued it due
to the side effects Sanney experienced.

Nothing within these facts remotely suggests that
Dr. Toyama acted with deliberate indifference to

Sanney's serious medical needs.  When Dr. Toyama first became involved, he provided Sanney immediate care that improved his condition.  When Sanney became ill again a year later, Dr. Toyama acted quickly to order testing and specialist support.  Even if Dr. Toyama misdiagnosed Sanney's condition initially, and this is not evident, Sanney's statement of facts do not show that Dr. Toyama failed to provide him safe, timely, and adequate medical treatment with deliberate indifference to his health.  At most, Sanney's allegations suggest medical malpractice.  Sanney's Eighth Amendment claim against Dr. Toyama is DISMISSED with leave to amend.

## 2.  *Unidentified HCF Medical Unit Staff*

Sanney first sought medical treatment at the HCF Medical Unit in or about July 2016, and says that he was seen there three times "over the span of one month."  Compl., ECF No. 1 at #6.  The Medical Unit staff recorded Sanney's vitals at each visit and said that he would be scheduled for an appointment with a physician.  Sanney does not explain what his "vitals" revealed, that is, whether he had a fever, high or low

blood pressure, a cough worthy of concern, or other symptoms that required immediate physician attention. Nor does he explain what treatment or medical care he received or failed to receive during these visits, such as over the counter medication for his cough and chills or instructions on how to proceed if his symptoms became worse. Although Sanney complains that they did not schedule him for an appointment with a physician until two days after he filed a grievance, it is only speculative whether this shows cause and effect. Sanney does not describe what treatment he was being given, whether his symptoms progressively worsened, or importantly, how long it normally takes to be scheduled for an appointment with a physician. It is possible that his appointment had been scheduled before he filed his grievance and that it was coincidental that it occurred two days later. Without more facts, this allegation is insufficient to show that HCF Medical Unit staff acted with deliberate indifference to Sanney's serious medical needs.

Moreover, Sanney alleges these claims indiscriminately against the HCF Medical Unit staff and "Admin[istration] Team," without alleging facts that show what any individual at the HCF Medical Unit personally did or failed to do that violated his rights. *See Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988). To adequately allege claims against an individual Medical Unit staff member, Sanney must allege that he suffered a specific injury as a result of a particular defendant's conduct and he must affirmatively link that injury to the violation of his rights.

As written, the Complaint alleges insufficient facts for the Court to plausibly conclude that any identifiable, individual HCF Medical Unit staff member was deliberately indifferent to Sanney's serious medical needs. Sanney's claims against the HCF Medical Unit and Staff are DISMISSED with leave granted to amend.

## C. Doe Defendants

Rule 10(a) of the Federal Rules of Civil Procedure requires the plaintiff to include the names of the parties in the action. This is because it is usually impossible to serve a summons and pleading on an anonymous defendant. Thus, the use of Doe Defendants is generally disfavored in the federal court. *See Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). Nonetheless, the use of Doe Defendants is sometimes necessary when a plaintiff cannot discover the identity of the defendant before filing the operative pleading. The burden of identifying and serving a defendant remains at all times on the plaintiff, however, and the Court will not undertake to investigate the name and identity of an unnamed defendant.

If Sanney is able to cure the deficiencies in his claims against the HCF Medical Unit individuals as discussed above, but is unable to obtain their names before the time to file an amended pleading expires, he may sue these persons as Doe Defendants. To do so,

Sanney may refer to each unknown defendant as Defendant John Doe #1, John Doe #2, Jane Doe #3, and so on, but he must allege facts showing how *each particular* Doe Defendant individually violated his rights. Sanney must provide the dates that he encountered each Doe Defendant and clearly describe what that individual did or failed to do that caused a violation of his constitutional rights. For example, John Doe #1 may have seen him at his first visit to the HCF Medical Unit, but failed to provide him care for his symptoms, or refused to schedule him for a physician appointment, despite the obvious need for such actions. Jane Doe #2 may have failed to ensure that Sanney received prescribed medical treatment or refused to schedule him for a physician appointment. Moreover, *if* Sanney elects to file an amended complaint using John Doe or Jane Doe designations, he must inform the Court of the steps that he took to try to identify each Doe Defendant.

If Sanney complies with these directions *and* he states a colorable claim, he may use the discovery

process for a limited period set by the Court to obtain their names, unless it is clear that discovery would not uncover their identities, or that the amended complaint will be dismissed on other grounds. *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (citing *Gillespie*, 629 F.2d at 642).

## IV.  <u>LEAVE TO AMEND</u>

The Complaint is DISMISSED with leave granted to amend consistent with this Order on or before May 18, 2020.  The amended pleading must cure the deficiencies noted in this Order.  Sanney may not expand his claims beyond those already alleged or add new claims, without explaining how those new claims relate to the claims alleged in the original Complaint.

Sanney must comply with the Federal Rules of Civil Procedure and the Local Rules for the District of Hawaii.  An amended pleading must be submitted on the court's prisoner civil rights form and it will supersede the preceding complaint.  *See Ramirez v. Cty. of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015); LR99.7.10.  Defendants not renamed and claims not

realleged in an amended complaint may be deemed
voluntarily dismissed.  *See Lacey v. Maricopa Cty.*, 693
F.3d 896, 928 (9th Cir. 2012) (en banc).  If Sanney
fails to file an amended complaint that cures the
deficiencies in his claims, this action may be
automatically dismissed and may count as a "strike"
under 28 U.S.C. § 1915(g).[7]

## V.  <u>CONCLUSION</u>

(1)  The Complaint is DISMISSED pursuant to 28
U.S.C. §§ 1915(e)(2) & 1915A(b)(1) for failure to state
a colorable claim for relief.

(2)  Sanney may file an amended pleading as
permitted on or before May 18, 2020.  Failure to file
an amended pleading that cures the noted deficiencies
in his claims may result in dismissal of this action

---

[7] 28 U.S.C. § 1915(g) bars a civil action by a prisoner
proceeding in forma pauperis:

> if the prisoner has, on 3 or more prior occasions,
> while incarcerated or detained in any facility,
> brought an action or appeal in a court of the
> United States that was dismissed on the grounds
> that it is frivolous, malicious, or fails to state
> a claim upon which relief may be granted, unless
> the prisoner is under imminent danger of serious
> physical injury.

without further notice and incur a strike pursuant to
28 U.S.C. § 1915(g).

(3)  The Clerk is DIRECTED to send Sanney a
prisoner civil rights complaint form so that he may
comply with the directions of this Order.

IT IS SO ORDERED.

DATED: April 10, 2020, Honolulu, Hawaii.



Helen Gillmor
United States District Judge