IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| YOSHIRO P. SANNEY,<br>#12275-122,<br><br>    Plaintiff,<br><br> vs.<br><br>HALAWA MEDICAL UNIT;<br>MEDICAL UNIT STAFF AND ADMIN<br>TEAM, BARNEY TOYAMA, M.D.;<br>JOHN DOE 1, JANE DOE 1; JOHN<br>DOE 2,<br><br>    Defendants. | CIVIL NO. 20-00141 HG-WRP<br><br>ORDER DISMISSING SECOND<br>AMENDED COMPLAINT AND<br>ACTION PURSUANT TO 28 U.S.C.<br>§§ 1915(e)(2) AND 1915A(b)(1) |

## ORDER DISMISSING SECOND AMENDED COMPLAINT AND ACTION PURSUANT TO 28 U.S.C. §§ 1915(e)(2) AND 1915A(b)(1)

Before the Court is pro se Plaintiff Yoshiro P. Sanney's ("Sanney") second

amended prisoner civil rights complaint ("SAC") brought pursuant to 42 U.S.C.

§ 1983.  ECF No. 21.  Sanney alleges that Defendants Barney Toyama, M.D., John

Doe 1, Jane Doe 1, and John Doe 2[1] violated his rights under the Eighth

Amendment by denying him adequate medical care during his incarceration at the

---

[1] In his original Complaint, Sanney also named as Defendants the "Halawa Medical Unit" and the "Medical Unit Staff and Admin Team."  ECF No. 1 at 1–2.  The Court previously dismissed Sanney's claims against these Defendants.  ECF No. 4 at 9–10; *see also* ECF No. 15 at 1 n.1.

Halawa Correctional Facility ("HCF") in 2016.[2]  For the following reasons, the

SAC is DISMISSED with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2) and

1915A(b), for Sanney's repeated failure to state a colorable claim upon which

relief may be granted.

# I.  <u>STATUTORY SCREENING</u>

The Court must conduct a pre-Answer screening of all prisoners' pleadings

pursuant to 28 U.S.C. §§ 1915(e)(2) (if they are proceeding in forma pauperis) and

1915A(a) (if they allege claims against government officials).  Claims or

complaints that are frivolous, malicious, fail to state a claim for relief, or seek

damages from defendants who are immune from suit must be dismissed.  *See*

28 U.S.C. §§ 1915(e)(2), 1915A(b); *Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th

Cir. 2000) (en banc); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010).

Screening under 28 U.S.C. §§ 1915(e)(2) and 1915A(a) involves the same

standard of review as that used under Federal Rule of Civil Procedure 12(b)(6).

*See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) (citation omitted).

Under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted

as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556

---

[2] Sanney was released from state custody, and he is currently incarcerated at the Federal Detention Center—Honolulu.  *See* Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (enter "Yoshiro" in "First" field and "Sanney" in "Last" field) (last visited Sept. 10, 2021).

U.S. 662, 678 (2009) (internal quotation marks omitted).  A claim is "plausible" when the facts alleged in the complaint would support a reasonable inference that the plaintiff is entitled to relief from a specific defendant for specific misconduct. *Id.* (citation omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  The "mere possibility of misconduct" or an "unadorned, the defendant-unlawfully-harmed me accusation" falls short of meeting this plausibility standard.  *Id.* at 678–79; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

Pro se litigants' pleadings must be liberally construed, and all doubts should be resolved in their favor.  *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted).  The Court must grant leave to amend if it appears that the defects in the complaint can be corrected, *Lopez*, 203 F.3d at 1130, but if a claim or complaint cannot be saved by amendment, dismissal with prejudice is appropriate.  *Sylvia Landfield Tr. v. City of Los Angeles*, 729 F.3d 1189, 1196 (9th Cir. 2013); *see also Banks v. ACS Educ.*, 638 F. App'x 587, 590 (9th Cir. 2016) ("Because [the plaintiff] had several earlier opportunities to amend his complaint and failed to add any factual allegations to cure the deficiencies identified by the district court, it was not an abuse of discretion to dismiss the . . . amended complaint with prejudice.").

## II.  **BACKGROUND**[2]

In July 2016, Sanney began experiencing what he describes as "symptoms consistent with pneumonia,"[3] including "chills, night sweats, incessant coughing, shortness of breath, exhaustion, loss of appetite[,] . . . and aches and pain[.]"  ECF No. 21 at 9.  Over the next "month and a half," Sanney visited the HCF's medical unit three times for treatment.[4]  *Id.*  Sanney met with a different nurse each visit. *Id.* at 9–11.

During Sanney's first visit to the medical unit, John Doe 1 met with him.  *Id.* at 9.  John Doe 1 took Sanney's temperature and blood pressure, and he weighed Sanney.  *Id.*  Sanney told John Doe 1 about his various symptoms.  *Id.*  Sanney also told John Doe 1 that he was having difficulty sleeping because of his "incessant coughing" and "aches and pains."  *Id.*  John Doe 1 listened with a stethoscope to Sanney's chest and suspected that Sanney could have pneumonia.  *Id.*  When Sanney asked for pain or cough medication, John Doe 1 said that Sanney needed to

---

[2] On screening, Sanney's facts are accepted as true and construed in the light most favorable to him.  *Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014).

[3] Pneumonia is an infection that inflames the air sacs in one or both lungs.  *See* Mayo Clinic, Pneumonia, https://www.mayoclinic.org/diseases-conditions/pneumonia/symptoms-causes/syc-20354204 (last visited Sept. 10, 2021).  Symptoms of pneumonia may include coughing, fatigue, fever, sweating, shaking chills, and shortness of breath.  *See id.*

[4] Sanney does not provide the exact dates for his three visits to the medical unit.

4

see a doctor first. *Id.* John Doe 1 told Sanney that an appointment with a doctor would be scheduled for him, and Sanney returned to his housing unit. *Id.*

During the next week, Sanney's condition "deteriorated." *Id.* He was "sleeping less," could eat only "bread soup," and was "constantly coughing." *Id.* Before he was called to see a doctor, Sanney returned to the medical unit and met with a second nurse, Jane Doe 1. *Id.* Jane Doe 1 took Sanney's temperature and blood pressure, and she weighed him. *Id.* Sanney described to Jane Doe 1 the symptoms he was experiencing at the time "in great detail." *Id.* Jane Doe 1 suspected that Sanney had the flu, told him to drink a lot of water, and returned him to his cell. *Id.* at 10. When Sanney asked for pain or cough medicine, Jane Doe 1 also told him that he would need to see a doctor first. *Id.*

According to Sanney, his condition "worsened considerably" a "few days" after his second visit to the medical unit. *Id.* The aches in his neck, hips, and joints became "more pronounced," and walking became difficult because of his "inability to breathe freely[.]" *Id.* His sleep was interrupted by "coughing spells." *Id.* Sanney claims that he had been ill for "about one month" by this point. *Id.*

A little more than a week after his second visit to the medical unit, Sanney returned to the medical unit a third time. *Id.* He was seen by another nurse, John Doe 2. *Id.* John Doe 2 took Sanney's temperature and blood pressure, and he weighed Sanney. *Id.* According to Sanney, John Doe 2 told him that his

symptoms could be related to an inactive tuberculosis[5] diagnosis Sanney had received years earlier.[6]  *Id.* at 11.  When Sanney asked for pain or cough medicine, John Doe 2 told him that he needed to see a doctor first.  *Id.*

On an unspecified date, Sanney filed a grievance against the medical unit and its staff complaining that they were deliberately indifferent to his "serious medical condition."  *Id.*  Three days later, Sanney was called to the medical unit, and he met with Dr. Toyama.  *Id.*  Dr. Toyama examined Sanney and ordered a chest X-ray.  *Id.*  The X-ray revealed an "abnormality" in Sanney's "upper right lung."  *Id.*  Dr. Toyama then ordered a second chest X-ray.  *Id.*  The second X-ray showed "some scarring [in Sanney's] upper right lung."  *Id.*  A radiologist, Dr. Cavin, who reviewed the X-rays said that a CT scan[7] could be done "*if* further information [was] desired."  *Id.* at 14 (emphasis added).  Instead of ordering a CT

---

[5] Tuberculosis ("TB") is a potentially serious infectious disease that mainly affects the lungs.  *See* Mayo Clinic, Tuberculosis,  https://www.mayoclinic.org/diseases-conditions/tuberculosis/symptoms-causes/syc-20351250 (last visited Sept. 10, 2021).  Inactive TB is a condition in which an individual has tuberculosis, but the bacteria remain in an inactive state and cause no symptoms.  *See id.*  Inactive TB can turn into active TB.  *See id.*  Symptoms of active TB include coughing, unintentional weight loss, fatigue, fever, night sweats, chills and loss of appetite.  *See id.*

[6] According to Sanney, he was diagnosed with inactive tuberculosis "several years" prior to 2016.  ECF No. 21 at 11, 15.  In an earlier pleading, Sanney stated that he was diagnosed with inactive tuberculosis in 2010.  ECF No. 12 at 11.

[7] A computerized tomography ("CT") scan combines a series of X-ray images taken from different angles to create cross-sectional images of bones, blood vessels, and soft tissues.  *See* Mayo Clinic, CT Scan, https://www.mayoclinic.org/tests-procedures/ct-scan/about/pac-20393675 (last visited Sept. 10, 2021).

scan, Dr. Toyama chose to prescribe a five-day dose of an antibiotic, Azithromycin.[8]  *Id.*

This course of treatment "helped [Sanney] bounce back to some sense of normalcy."  *Id.* at 11.  It eased his discomfort, "allowed him to rest a little better," and enabled him to eat solid foods.  *Id.* at 14.  Sanney was also able to return to his job at the HCF's print shop.  *Id.*  Sanney was "under the impression . . . that he had concurred his illness and was on the road to a full recovery."  *Id.* at 16.

Sometime in 2017, "[a]pproximately 1 year" after Sanney met with Dr. Toyama, his symptoms reappeared.  *Id.*  Dr. Toyama promptly met with Sanney, examined him, and ordered another chest X-ray.  *Id.* at 11.  A different radiologist recommended that a CT scan be taken, and Dr. Toyama ordered a CT scan at Pali Momi Medical Center.  *Id.*at 12.

Two days after the CT scan, Sanney was told that he had active tuberculosis.[9]  *Id.*  He was immediately taken to the Queen's Medical Center ("QMC").  *Id.*  Sanney was admitted and placed in an isolation unit.  *Id.* Additional tests for tuberculosis, however, came back negative.  *Id.*

---

[8] Azithromycin is used to treat certain bacterial infections in many different parts of the body.  *See* Mayo Clinic, Azithromycin, https://www.mayoclinic.org/drugs-supplements/azithromycin-oral-route/description/drg-20072362 (last visited Sept. 10, 2021).

[9] It is unclear whether this diagnosis came from Dr. Toyama or a doctor at Pali Momi.

A pulmonologist, Dr. Sato, then performed a bronchoscopy on Sanney.[10]  *Id.*

Dr. Sato concluded that Sanney had "invasive pulmonary aspergillosis,"[11] not

tuberculosis.  *Id.*  According to Sanney, Dr. Sato estimated that Sanney may have

had the infection for between nine and twelve months.  *Id.*  Sanney immediately

received another antibiotic, Voriconazole.[12]  *Id.*  Sanney responded well to the

treatment and he was discharged from the hospital on September 28, 2017.  *Id.*

Sanney continued taking Voriconazole for approximately ten months, until he

developed an "adverse reaction" to the medication.  *Id.* at 13.  At that point, he

stopped taking it entirely.  *Id.*

Sanney did not file his original Complaint until March 27, 2020.[13]  ECF No.

1.  The Court issued an Order Dismissing Complaint with Leave to Amend on

---

[10] During a bronchoscopy, a thin tube is passed through the nose or mouth, down the throat, and into the lungs.  *See* Mayo Clinic, Bronchoscopy, https://www.mayoclinic.org/tests-procedures/bronchoscopy/about/pac-20384746 (last visited Sept. 10, 2021).  The procedure allows a doctor to examine the lungs and air passages.  *Id.*

[11] Aspergillosis is an infection caused by a type of mold.  *See* Mayo Clinic, Aspergillosis, https://www.mayoclinic.org/diseases-conditions/aspergillosis/symptoms-causes/syc-20369619 (last visited Sept. 10, 2021).  Invasive aspergillosis is the most severe form of the infection.  *Id.*

[12] Voriconazole is used to treat serious fungal or yeast infections, such as aspergillosis. *See* Mayo Clinic, Voriconazole, https://www.mayoclinic.org/drugs-supplements/voriconazole-oral-route/side-effects/drg-20095248?p=1 (last visited Sept. 10, 2021).

[13] "Claims brought under § 1983 are subject to the forum state's statute of limitations for personal injury suits."  *Flynt v. Shimazu*, 940 F.3d 457, 461 (9th Cir. 2019).  "In Hawai'i, the statute of limitations for personal injury actions is two years."  *Bird v. Dep't of Human Servs.*, 935 F.3d 738, 743 (9th Cir. 2019); *see also* Haw. Rev. Stat. § 657-7.  The Court does not reach the statute of limitations because, at screening, Sanney fails to state a plausible claim for relief.

April 10, 2020.  ECF No. 4.  The Court explained that Sanney's claims for money damages against any state officials acting in their official capacities were barred by the Eleventh Amendment.  *Id.* at 8–10.  The Court further explained that Sanney failed to state an Eighth Amendment claim for denial of adequate medical care because he did not plausibly allege that a prison official was deliberately indifferent to a serious medical need.  *Id.* at 10–18.

Sanney filed his First Amended Complaint on March 4, 2021.  ECF. No. 12. The Court issued an Order Dismissing First Amended Complaint and Denying Motion for Appointment of Counsel on May 28, 2021.  ECF No. 15.  The Court again explained that Sanney's claims for money damages against state officials acting in their official capacities were barred by the Eleventh Amendment.  *Id.* at 10–11.  The Court also explained that Sanney could not seek prospective injunctive relief against state officials in their official capacities based on events at the HCF because he was no longer incarcerated there.  *Id.* at 11.  The Court further explained that Sanney failed to state an Eighth Amendment claim for denial of adequate medical care because he did not plausibly allege that a prison official was deliberately indifferent to a serious medical need.  *Id.* at 12–20.

Sanney filed his SAC on August 6, 2021.  ECF No. 21.  Sanney again names Dr. Toyama in his official capacity and seeks prospective injunctive relief against

him based on events at the HCF.[14]  *Id.* at 1, 27.  Sanney names John Doe 1, Jane Doe 1, and John Doe 2 in their individual capacities claiming that they violated the Eighth Amendment by denying him adequate medical care.  *Id.* at 2–3, 8–11, 18–24.  Sanney seeks unspecified compensatory and punitive damages.  *Id.* at 27.

### III.  DISCUSSION

### A.    Liability under 42 U.S.C. § 1983

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988).

Section 1983 requires a connection or link between a defendant's actions and the plaintiff's alleged deprivation.  *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978); *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976); *May v. Enomoto*, 633 F.2d 165, 167 (9th Cir. 1980).  "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made."  *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).  A

---

[14] In its May 28, 2021 Order, the Court dismissed with prejudice Sanney's claims against Dr. Toyama in his individual capacity.  *See* ECF No. 15 at 14–17.

plaintiff must allege that he suffered a specific injury as a result of a particular defendant's conduct, and the plaintiff must affirmatively link that injury to the violation of his rights.

## B.  Sanney's Claim Against Dr. Toyama is Moot

Sanney names Dr. Toyama in his official capacity and seeks prospective injunctive relief against him.  ECF No. 21 at 1, 27.

"The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities." *Aholelei v. Dep't of Pub. Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007) (citation omitted); *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101–03 (1984).  It does not bar official-capacity suits for prospective relief to enjoin alleged ongoing violations of federal law.  *See Wolfson v. Brammer*, 616 F.3d 1045, 1065–66 (9th Cir. 2010); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989).

As the Court explained in its May 28, 2021 Order, Sanney may not seek prospective injunctive relief against Dr. Toyama in his official capacity based on events at the HCF because Sanney is no longer incarcerated there.  *See* ECF No. 15 at 11; *see also Dilley v. Gunn*, 64 F.3d 1365, 1368–69 (9th Cir. 1995) (concluding that prisoner's claims for injunctive relief were moot because he was transferred to

another prison and had not demonstrated a reasonable expectation that he would be transferred back); *Padilla v. Nev. Dep't of Corr.*, 510 F. App'x 629, 630 (9th Cir. 2013) ("Plaintiff's claims for injunctive relief from the conditions of confinement at [one prison] are moot now that he has been transferred to [another prison]."); *Voth v. Mills*, 473 F. App'x 646, 646 (9th Cir. 2012) ("The district court properly determined that [the plaintiff's] claims for declaratory and injunctive relief were moot because [the plaintiff] was no longer housed in the prison where the allegedly unconstitutional events occurred.").  Sanney's claims against Dr. Toyama are DISMISSED.

## C.   Eighth Amendment:  Denial of Adequate Medical Care

Sanney names John Doe 1, Jane Doe 1, and John Doe 2 in their individual capacities alleging that they violated the Eighth Amendment by denying Sanney adequate medical care during his incarceration at the HCF.  ECF No. 21 8–24.

### 1.   Legal Framework

"Individuals in state custody have a constitutional right to adequate medical treatment."  *Sandoval v. County of San Diego*, 985 F.3d 657, 667 (9th Cir. 2021) (citing *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976)).  "For inmates serving custodial sentences following a criminal conviction, that right is part of the Eighth

Amendment's guarantee against cruel and unusual punishment." *Sandoval*, 985 F.3d at 667.

"In order to prevail on a claim under the Eighth Amendment for inadequate medical care, a plaintiff must show 'deliberate indifference' to his 'serious medical needs.'" *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014). "This includes both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Id.* (quotation marks omitted).

To meet the objective element, a plaintiff must demonstrate the existence of a serious medical need. *Estelle*, 429 U.S. at 104. Such a need exists if failure to treat the injury or condition "could result in further significant injury" or cause "the unnecessary and wanton infliction of pain." *Edmo v. Corizon*, 935 F.3d 757, 785 (9th Cir. 2019) (per curiam) (quotation marks omitted). "Examples of serious medical needs include [t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Lopez*, 203 F.3d at 1131 (internal

quotation marks omitted).  "Serious medical needs can relate to physical, dental and mental health."[15]  *Edmo*, 935 F.3d at 785 (quotation marks omitted).

If a prisoner "establishes a sufficiently serious medical need, he must then show the [official's] response to the need was deliberately indifferent."  *Edmo*, 935 F.3d at 786 (quotation marks omitted).   "Deliberate indifference is a high legal standard."  *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004).  The indifference to a prisoner's medical needs must be "substantial."  *Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1081–82 (9th Cir. 2013).  "Mere 'indifference,' 'negligence' or 'medical malpractice'" will not support a denial-of-medical-care claim.  *Id.* at 1082.  "Even gross negligence is insufficient to establish deliberate indifference to serious medical needs."  *Id.*  Likewise, "[a] difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference."  *Snow v. McDaniel*, 681 F.3d 978, 987 (9th Cir. 2012) (citing *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989)), *overruled on other grounds by Peralta v. Dillard*, 744 F.3d 1076, 1083 (9th Cir. 2014) (en banc).  "To

---

[15] Sanney was diagnosed with invasive pulmonary aspergillosis in 2017.  ECF No. 21 at 12.  According to Sanney, this infection eventually "destroyed roughly one third of his upper right lung."  *Id.*  Sanney alleges that a doctor estimated that the infection went undiagnosed for between nine months and a year.  *Id.*  Given these allegations, the Court assumes for purposes of screening that Sanney had a serious medical need when he met with John Doe 1, Jane Doe 1, and John Doe 2 in 2016.

show deliberate indifference, the plaintiff must show that the course of treatment the [official] chose was medically unacceptable under the circumstances and that the [official] chose this course in conscious disregard of an excessive risk to the plaintiff's health." *Edmo*, 935 F.3d at 786 (quotation marks omitted) (brackets in original).

### 2.   *John Doe 1*

John Doe 1 met with Sanney during his first visit to the medical unit.  *Id.* at 9.  During this visit, John Doe 1 took Sanney's temperature and blood pressure, and he measured Sanney's weight.  *Id.*  After Sanney described his symptoms, John Doe 1 listened to Sanney's chest with a stethoscope and concluded that Sanney could have pneumonia.  *Id.*  Sanney concedes that his symptoms were "consistent with pneumonia" when he met with John Doe 1.  *Id.*  John Doe 1 told Sanney that a doctor's appointment would be scheduled for him.  *Id.*  When Sanney asked John Doe 1 for cough or pain medication, John Doe 1 told Sanney that he needed to see a doctor first.  *Id.*

Sanney fails to state a plausible claim against John Doe 1.  To the extent Sanney is claiming that John Doe 1 should have gotten him to a doctor sooner, Sanney does not allege that his symptoms were so severe that he should have seen a doctor immediately.  While Sanney asserts that John Doe 1 "failed to follow up" on Sanney's doctor's appointment, ECF No. 21 at 18, Sanney does not allege that

John Doe 1 knew that his follow-up appointment with a doctor did not occur. Indeed, Sanney does not assert that he had any contact with John Doe 1 after his initial visit to the medical unit.  To the extent Sanney alleges that John Doe 1 misdiagnosed his ailment as pneumonia instead of invasive pulmonary aspergillosis, a misdiagnosis without more is insufficient to show deliberate indifference.  *See Garcia v. Katukota*, 362 F. App'x 622, 622 (9th Cir. 2010) ("[E]vidence of medical misdiagnosis and of a difference of medical opinion are insufficient to show deliberate indifference.").

Although Sanney notes that John Doe 1 would not give him cough or pain medication until he saw a doctor, this is also not enough to state a plausible deliberate indifference claim.  John Doe 1's statements reflect his subjective belief that he could not give Sanney any medicine before he was seen by a doctor, not deliberate indifference to a serious medical need.  *See Lemire*, 726 F.3d at 1082 (noting that "mere 'indifference,' 'negligence,' or 'medical malpractice'" will not support an Eighth Amendment claim); *see also Manley v. S. Health Partners, Inc.*, No. 5:14-cv-111-FDW, 2014 WL 5509183, at *2 (W.D.N.C. Oct. 31, 2014) (concluding that plaintiff failed to state a deliberate indifference claim against nurses who had no authority to provide medication); *Chizum v. Corr. Med. Servs.*, No. 3:09cv527 JD, 2011 WL 2928487, at *4 (N.D. Ind. July 18, 2011) (concluding that plaintiff failed to state a claim against nurse who lacked the authority to

16

prescribe medication).  Sanney's claim against John Doe 1 is DISMISSED.  *See Sanchez v. Seibel*, 830 F. App'x 943, 943 (9th Cir. 2020) (concluding that district court's dismissal of deliberate indifference claim was proper because prisoner failed to allege facts sufficient to state a plausible claim).

### 3.  *Jane Doe 1*

Jane Doe 1 met with Sanney during his second visit to the medical unit, about a week after Sanney's visit with John Doe 1.  ECF No. 21 at 9–10.  Jane Doe 1 took Sanney's temperature and blood pressure, and she measured his weight.  *Id.*  After Sanney described to Jane Doe 1 the symptoms he was experiencing at the time his second visit "in great detail," Jane Doe 1 decided that Sanney likely had the flu.  *Id.* at 10.  Jane Doe 1 told Sanney to stay hydrated and returned him to his cell.  *Id.*

To the extent Sanney contends that Jane Doe 1 should have gotten him to a doctor sooner, Sanney does not allege that he told Jane Doe 1 about his first visit to the medical unit, John Doe 1's earlier diagnosis, or the fact that a doctor's appointment should have been scheduled for him.[16]  Sanney also does not allege that he informed Jane Doe 1 that his condition was deteriorating.[17]  Without the

---

[16] Although Sanney "hop[ed]" that Jane Doe 1 would set up a doctor's appointment for him as "soon as possible," ECF No. 21 at 10, Sanney does not allege that he asked Jane Doe 1 to see a doctor immediately.

benefit of this context, Jane Doe 1 could only assess the symptoms Sanney presented at the time she met with him. *See Cunningham v. King County*, No. C14-0798-TSZ, 2015 WL 753519, at *4 (W.D. Wash. Feb. 23, 2015) (concluding that prisoner failed to establish deliberate indifference where he did not report increased symptoms to medical staff). Again, any claim by Sanney that Jane Doe 1 misdiagnosed his condition does not amount to deliberate indifference. *See Garcia*, 362 F. App'x at 622.

To the extent Sanney alleges that Jane Doe 1 would not give him cough or pain medication, Jane Doe 1 also told Sanney that she could not give him medicine until he saw a doctor. Jane Doe 1's statements reflect her subjective belief that she could not give Sanney any medicine before he was seen by a doctor, not deliberate indifference to a serious medical need. *See Lemire*, 726 F.3d at 1082; *Manley*, 2014 WL 5509183, at *2. Sanney's claim against Jane Doe 1 is DISMISSED. *See Sanchez*, 830 F. App'x at 943.

---

[17] Citing "[r]ecords . . . kept on a computer system," Sanney asserts that nurses "had full access to the data collected over the course of his visits." ECF No. 21 at 22. Sanney does not allege, however, that Jane Doe 1 and John Doe 2 reviewed his computer records during his second and third visits to the medical unit, respectively. Nor does he allege that he asked them to do so.

### 4.    *John Doe 2*

John Doe 2 met with Sanney during his third visit to the medical unit.  ECF No. 21 at 10–11.  John Doe 2 took Sanney's temperature and blood pressure, and he measured Sanney's weight.  *Id.* at 10.  According to Sanney, John Doe 2 told him that his symptoms could be related to an inactive tuberculosis diagnosis Sanney had received several years earlier.  *Id.* at 11.  When Sanney asked John Doe 2 for cough or pain medication, John Doe 2 also told Sanney that he needed to see a doctor first.  *Id.*

To the extent Sanney is claiming that John Doe 2 should have gotten him to see a doctor sooner, Sanney again does not allege that he told John Doe 2 about either of his prior two visits to the medical unit or John Doe 1 and Jane Doe 1's earlier diagnoses.  Nor does he claim that he asked John Doe 2 to see a doctor immediately.  While Sanney claims that his condition had "worsened considerably" by the time of his third visit to the medical unit, *id.* at 10, he does not allege that he told John Doe 2 about the progression of his symptoms.  Without this context, Sanney fails to state a claim against John Doe 2.  *See Cunningham*, 2015 WL 753519, at *4.  If Sanney is complaining about John Doe 2's diagnosis, mere misdiagnosis does not constitute deliberate indifference.  *See Garcia*, 362 F. App'x at 622.

To the extent Sanney is claiming that John Doe 2 should have provided him with medicine, like John Doe 1 and Jane Doe 1, John Doe 2 said that he could not give Sanney any medication before he saw a doctor.  Sanney has not plausibly alleged, therefore, that John Doe 2 knew of and disregarded an excessive risk to his health.[18]  *See Sandoval*, 985 F.3d at 338 ("[A] prison official who should have been aware of a medically related risk to an inmate, but in fact was not, has not violated the Eighth Amendment, no matter how severe the risk." (internal quotation marks and citation omitted)).  Sanney's claims against John Doe 2 are DISMISSED.  *See Sanchez*, 830 F. App'x at 943.

## IV.  28 U.S.C. § 1915(g)

Sanney is notified that this dismissal may count as a "strike" under 28 U.S.C. § 1915(g).  Section 1915(g) bars a prisoner from proceeding in forma pauperis in a civil action:

> if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

---

[18] Sanney alleges that "over the counter pain medication are dispensed at the medical unit and were often given to inmates" while they waited to see a doctor.  ECF No. 21 at 18.  Sanney does not allege, however, that John Doe 1, Jane Doe 1, or John Doe 2 ever did this.  Nor does he allege that any of them knew that this was allowed.

20

## V.  <u>CONCLUSION</u>

The Second Amended Complaint is DISMISSED pursuant to 28 U.S.C.

§§ 1915(e)(2) and 1915A(b)(1) for Sanney's failure to state a colorable claim for

relief.  Because Sanney has had three opportunities to state a colorable claim for

relief and was unable to do so, this dismissal is with prejudice and may later

constitute a strike under 28 U.S.C. § 1915(g).  The Clerk is DIRECTED to enter

judgment and terminate this case.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, September 10, 2021.



Helen Gillmor
United States District Judge

---

<u>Sanney v. Halawa Medical Unit, et al.</u>, CIVIL NO. 20-00141 HG-WRP;
ORDER DISMISSING SECOND AMENDED COMPLAINT AND ACTION
PURSUANT TO 28 U.S.C. §§ 1915(e)(2) AND 1915A(b)(1)